GEORGE W. PRESSEY, appellant,

*v.*

THE H. B. SMITH MACHINE COMPANY, respondents.

Under an agreement by respondents to manufacture and sell velocipedes under appellant's patents exclusively, during such patents' existence, for one-half the net profits; to make returns on January 1st and July 1st, of each year; to charge for special superintendence, if necessary; to advertise; with power in the appellant to revoke and terminate such license to manufacture for respondents' breach of the contract—*Held,* (1) that, at the termination of the contract, the net profits must be calculated on the whole term, and, consequently, the losses incurred in the first years of such manufacturing should be deducted from the profits of later years; (2) that respondents, by a subsequent modification of the contract, were entitled to charge appellant a royalty on an attachment and improvement to the velocipedes, patented by them, which increased the profits materially, and to which appellant then made no objection; (3) that respondents should be allowed the costs of certain advertising, although not included (through their book-keeper's omission) in their semi-annual accounts rendered, nor claimed by them until after appellant had filed his bill in this cause; (4) that the expenses and losses incurred in the sale of the velocipedes in respondents' store in Philadelphia, should be deducted; (5) that respondents ought to be allowed the wages paid appellant as "special superintendent" while he was instructing respondents' workmen in making and putting together at first the several parts of the velocipedes; (6) that the contractual power to sell these velocipedes did not authorize respondents to exchange them for others; (7) that appellant was entitled to interest on the unpaid net profits found to be due to him on January 1st and July 1st, of each year, during the term.

Pressey *v.* H. B. Smith Machine Co.

The appellant, the complainant below, filed his bill against the defendants for an account of his share of the profits of the manufacture and sale of bicycles, under the following contract:

"This agreement, made this eighth day of January, A. D. eighteen hundred and eighty-one, between George W. Pressey and Edwin L. Crowell, of Hammonton, New Jersey, party of the first part, and the H. B. Smith Machine Company, of Smithville, party of the second part, witnesseth: That letters patent No. 92,928, dated July 27th, 1869, issued to Solomon Andrews, of Perth Amboy, N. J., assigned to E. L. Crowell November 22d, 1880; also patent No. 233,640, dated October 26th, 1880, granted to George W. Pressey, and assigned to himself and E. L. Crowell, of Hammonton, N. J.; also patent No. 234,722, dated November 23d, 1880, granted to George W. Pressey, and assigned to himself and E. L. Crowell, of Hammonton, N. J.; and whereas, the party of the second part is desirous of manufacturing velocipedes containing the said patented improvements:

"Now, therefore, *First.* The party of the first part hereby grants unto the said party of the second part an exclusive license to manufacture and sell, within the United States, subject to the conditions hereinafter named, to the end of the terms for which said letters patent were granted, velocipedes containing the patented improvements aforesaid.

"*Second.* The party of the second part agrees to manufacture said velocipedes in a good, workmanlike manner, and make full and true returns, under oath, if required, upon the first day of January and July in each year.

"*Third.* The party of the second part agrees to pay to the party of the first part one-half of the net profits derived from the manufacture and sale of said patented velocipedes.

"*Fourth.* It is agreed and understood that, in determining the cost of manufacturing and selling said machines, all materials used in their construction shall be charged up at actual cost, the labor employed in their construction shall be charged up at actual cost, and an amount equal to the amount paid for labor, as aforesaid, shall be charged to cover the following expenses, viz.: Shop-rent, use of tools and power, office-work, general superintendence and other incidental expenses, including a liberal advertisement in the 'Mechanic.' It being understood that any special superintendence that may become necessary shall be considered as labor actually employed in their manufacture and charged for accordingly, and any advertising, excepting that done in the 'Mechanic,' is to be charged to the expense account at actual cost.

"*Fifth.* It is agreed and understood that, in case the letters patent hereinbefore recited shall be infringed, or in case the party of the second part shall be prosecuted on account of building the above-named patented velocipedes, the party of the second part is hereby authorized to appropriate as much of the funds due or to become due the party of the first part as may be necessary to prosecute infringements, or to defend themselves from prosecution; and, pending any such suit, should the profits of the business be reduced below 20

per cent., the party of the second part shall always be entitled to retain a manufacturer's profit of 10 per cent. For instance, if the profits of the business should be reduced to 15 per cent. above cost, as aforesaid, the party of the second part shall retain 10 per cent. and pay to the party of the first part 5 per cent., which shall be in full to the dates of payment.

"*Sixth.* Upon failure of the party of the second part to make returns, or to make payment as herein provided, for thirty days after the days herein named (delays on account of law suits excepted), or to use due diligence in the manufacture and sale of said patented velocipedes, the party of the first part may terminate this license, but the party of the second part shall not thereby be discharged from any liability to the party of the first part for any profits due at the time of the service of said notice.

"In witness whereof we have hereunto respectively set our hands and affixed our seals this eighth day of January, in the year A. D. one thousand eight hundred and eighty-one.

"G. W. PRESSEY,    [SEAL.]

"E. L. CROWELL,    [SEAL.]

"H. B. SMITH, President.  ⎰  SEAL OF

"J. J. WHITE, Treasurer.  ⎱  H. B. SMITH MACHINE COMPANY.

"Signed, sealed and delivered in the presence of

"E. F. BURNS,

"CHAS. S. F. CHICKERING."

The respondents answered, and rendered an account, which was referred to a master to be settled. The master made his report on January 17th, 1889, to which the complainant filed several exceptions.

These exceptions were passed upon by the court, through one of its advisory masters, *Barker Gummere, Esq.*, and two of them were sustained: one relating to a charge of $75 for a tricycle, and the other to the failure of the master to allow interest on the accumulated profits found to be due and improperly withheld.

The complainant appealed from so much of the decree of the court as "adjudges that the master's report be confirmed in respect to profits, royalties, Pressey's wages, and catalogues."

A counter-appeal was taken by the defendant company to the same decree, in respect to the two items of the exceptions which were sustained by the court of chancery.

The following conclusions were filed by *Barker Gummere, Esq.*:

The master, in taking and stating the account directed by this court, has applied the profits earned during the later years of the business to the payment of the losses sustained therein during the early years thereof. To this the complainant objects, and by his *first* exception insists, that the master should have allowed him one-half of the profits earned, if any, during each period of six months, without regard to antecedent losses.

The construction of the written agreement between the parties must determine the question. The agreement covers a period beginning January 8th, 1881, and to continue until the expiration of the complainant's patents, during which period the defendant has the exclusive right, and is bound, to manufacture and sell bicycles under complainant's patents, rendering semi-annual returns of the business, and paying to the complainant "one-half of the *net profits* derived from the manufacture and sale of said patented velocipedes." In my opinion, the proper construction of this covenant to pay over *net profits* is, that the defendant thereby covenanted to pay to the complainant one-half of the profits realized during the continuance of the contract. In order to sustain the contention of the complainant, it would be necessary to read the contract as follows: "To pay to the complainant one-half of the *net profits*, if any, derived from the manufacture and sale of said patented velocipedes during each period of six months." The complainant insists, that such a construction is imperative, because the defendant agrees to make payment at the end of each six months, and that the agreement is, therefore, severable into succeeding separate contracts, each for the period of six months, during the existence of the patents. Such a construction is not permissible. The contract is for a specified and entire period, and all its obligations continue throughout the whole term. The agreement to pay profits at the end of each six months is an agreement to pay the *apparent* net profits; the *actual* net profits cannot be ascertained until the termination of the contract. The semi-annual payments are payments *on account* of apparent profits, and are not *final;* the

final division of profits can only be made upon a final adjustment of accounts at the termination of the contract.

The *first* exception is therefore overruled.

The complainant's *second* exception is, that the master has allowed to the defendant a royalty for a certain patented improvement made by the defendant, and by it attached to certain bicycles manufactured under the agreement. The result of this attachment was to increase the profits upon the manufacture and sale of each bicycle by about the sum of $20, and the defendant has charged and retained for every such attachment a royalty of $5. The complainant claims one-half of the profits resulting from the attachment of the improvement, but insists that he is not bound to pay the royalty. It is clear that the agreement does not give the defendant any right to attach its improvements to the bicycles, nor oblige it to do so; but it is equally clear, that this agreement could be so modified by the express or implied parol agreement of the parties, so as not only to permit, but to require the defendant to attach such improvement. In my opinion, the agreement was so modified, on the part of the defendant, by its letters of July 30th, 1885, January 29th, 1886, and July·26th, 1886, and by its accounts, rendered June 30th, 1886, and semi-annually thereafter; and on the part of the complainant, by his tacit consent to the proposed attachment of the improvement, and the royalty to be paid therefor, and by his present demand of one-half of the profits which have resulted from the attachment of such improvement. In my opinion, the complainant was bound to dissent when he received the letters; he knew that his silence was construed by the defendant to be a consent, and that it would induce it to attach these improvements to a large number of bicycles; and he also knew, when the accounts were rendered to him, that his silence had induced and would continue to induce the defendant to attach these improvements, upon the faith that the payment of the royalty was agreed to, and that, thereby, the profits were and would be largely increased. Equity will not permit him to stand by and say nothing; he was bound to speak but did not, and he must now remain silent. I am also of opinion, that his present claim

of one-half of the profits, resulting from the attachment of the improvement, which was induced by his silence, is a ratification of the modification of the agreement which was proposed by the defendant in the letters above mentioned.    If he claims the profit he must pay the royalty.

The *second* exception is therefore overruled.

The *third* exception, that the defendant, in its accounts, rendered prior to the filing of the bill, did not claim the expense of publishing certain catalogues, but now seeks to surcharge such expense.    The complainant insists that the defendant has thus admitted, by its accounts, that it was not entitled, under the agreement, to charge this expense as a part of the " advertisement" mentioned therein, and that such an admission estops the defendant from now setting up the claim.    There is force in this contention, but, in my opinion, the non-claim by the defendant does not amount to an estoppel.    If the semi-annual accounts rendered by the defendant be taken to be " accounts stated," and even if it were proved that the claim for the expense of the " catalogues" had been questioned by the complainant, and was omitted, by the consent of both parties, such omission would not have been conclusive against it.    *Bright* v. *Coffman, 15 Ind. 371.*

In the present case, the testimony certainly shows nothing more than that the book-keeper omitted the charge because he doubted its propriety, and awaited further instructions from his superiors.    I do not think that this non-action is conclusive. The catalogues were a reasonable and advantageous part of the " advertising" contemplated by the parties, and provided for in the agreement, and the expense thereof is properly charged by the defendant.

The *third* exception is overruled.

The *fourth* exception is to the master's allowance of the expenses and losses incurred in the sale of bicycles at the defendant's store in Philadelphia.    There is no suggestion of fraud in this matter on the part of the defendant.    The agreement entitles the complainant to one-half the net profits arising from the sales, and this the master has allowed him.    Substantially the

complainant claims one-half of the gross profits of these sales, which he is not entitled to.

The *fourth* exception is overruled.

The *fifth* exception is, that the master has allowed to the defendant, under the fourth clause of the agreement, double the wages paid by the defendant to the complainant.

The complainant contends that his services were neither labor employed in the construction of bicycles, nor special superintendence of such construction, but that, if a superintendent at all, he was a general superintendent.

It is quite clear that the complainant, who was the inventor of the bicycle, was employed to develop the practical construction of his machine, and instruct the workmen in the proper production, adaptation and putting together of its various parts. It is equally clear that the workmen were "new" to this employment, and required such instruction; and it is also clear that when they should have been fully instructed, the further services of the instructor would be unnecessary. In my opinion, therefore, the service thus rendered by the complainant was temporary and special. I think that the term "general superintendence," as used in the agreement, imports a superintendence which would be necessary and continuous throughout the whole duration of the agreement; and that the term "special superintendence" imports such temporary and occasional service as would be required in the instruction &c., of the workmen in the first practical construction of the original machine, and in the practical improvement of it from time to time by new arrangements of its parts, or by the introduction of new devices. I therefore conclude that the services of the complainant were those of a special superintendent of the construction of the bicycles, and that the allowance made by the master is correct.

The *fifth* exception is overruled.

The *sixth* exception is to the allowance to the defendant of a charge of "$75 for an American Road Tricycle."

The explanation of the charge is, that the defendant traded a second-hand bicycle for it. The explanation is not sufficient to justify the allowance. The agreement specifically defines the

Pressey v. H. B. Smith Machine Co.

power of the defendant to be "the manufacture and sale of said patented velocipedes," and a power to sell is not an implied power to exchange.

The *sixth* exception is sustained.

The *seventh* exception is to the refusal of the master to charge the defendant with interest upon one-half of the ascertained apparent profits, from the date of rendering the account thereof to the date of the master's report.

The defendant agreed to make full and true returns, semiannually, and that if it failed to make returns or make payment for thirty days after the 1st days of January and July in each year, the license might be revoked. The defendant was therefore bound to pay to the complainant, on the 31st days of January and July in each year, one-half of the net profits earned during the respective preceding periods. No demand by the complainant was necessary; the defendant's obligation was complete to pay on a certain day a sum which it could render certain. It has rendered the sum certain, and has stated it to the complainant. It has practically set aside for the complainant his share of the net profits, and it agreed to pay such share by a day certain. It has therefore made default in such payment, and must pay interest as the penalty of such default, and the master should have charged it with such interest. Interest must be allowed to the defendant upon any over-payment of profits.

The *seventh* exception is sustained.

The remaining exceptions are formal, and are disposed of by the foregoing conclusions, and are therefore formally overruled.

*Mr. B. G. Peck* and *Mr. D. J. Pancoast,* for the appellant.

*Mr. M. R. Sooy,* for the respondents.

PER CURIAM.

This decree unanimously affirmed, for the reasons given by the advisory master.